# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1238V
UNPUBLISHED

| | |
|---|---|
| BELINDA DAWSON-SAVARD,<br><br>                   Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                   Respondent. | Chief Special Master Corcoran<br><br>Filed: July 14, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.

*Zoe Wade*, U.S. Department of Justice, Washington, DC, for respondent.

**RULING AWARDING DAMAGES – SPECIAL PROCESSING UNIT**[1]

On September 12, 2017, Belinda Dawson-Savard filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left Shoulder Injury Related to Vaccine Administration (SIRVA) as a result of an influenza ("flu") vaccine administered on October 10, 2016.  Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

The parties have reached agreement on all components of damages except for past and future pain and suffering. For the reasons described below, **I find that Petitioner is entitled to an award of damages for pain and suffering in the amount of**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755.  Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**$130,000.00, representing compensation for actual past pain and suffering and $500.00 per year for future pain and suffering.**

I.  **Relevant Procedural History[3]**

The parties initially attempted informal resolution of this case through settlement discussions. ECF 56. However, after attempting informal resolution for almost one year, Petitioner reported that the parties "are quite far apart in their respective valuations of the case." ECF 41. I subsequently issued a ruling "find[ing] the onset of Petitioner's [SIRVA] occurred within 48 hours of vaccination." ECF 53. Respondent subsequently filed an amended Rule 4(c) report in which he stated that he did not contest that Petitioner is entitled to compensation. ECF 55. I issued a ruling on entitlement on December 12, 2019. ECF 56.

The parties then attempted (in effect for the second time) to informally resolve the issue of damages for approximately four more months. *See* ECF 59, ECF 60, and ECF 61. They reached agreement on lost wages and unreimbursed expenses,[4] but reached an impasse on the issue of pain and suffering. ECF 61. After giving the parties an opportunity to file written briefs on this issue, I scheduled this matter for an expedited hearing and ruling based upon all evidence filed to date and the parties' briefing. ECF 63. The hearing was held on June 26, 2020.[5]

In Petitioner's initial brief and her reply brief filed in response to Respondent's brief, Petitioner requests that I award her $180,000.00 for past pain and suffering and $1,500.00 per year for future pain and suffering. ECF 62 and ECF 70. Respondent, in contrast, proposes that I award Petitioner $120,000.00 for past pain and suffering and no future pain and suffering. ECF 67.

II.  **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] I adopt the comprehensive procedural history set forth in ECF 53 and ECF 56.

[4] *See* ECF 62 and ECF 67. Specifically, the parties agree on an award of $28,030.13 in lost wages, and $145.11 in unreimbursed expenses. *Id*.

[5] The transcript from the hearing has yet to be filed, but it is incorporated by reference herein.

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.*, No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[6] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.     Appropriate Compensation in this SIRVA Case

In this case, awareness of the injury is not disputed. The record reflects that at all times, Petitioner was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

When performing this analysis, I review the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents and at the expedited hearing held on June 26, 2020. I consider prior awards for pain and suffering in both SPU and non-SPU SIRVA cases and rely upon my experience in adjudicating those cases.[7] However, I base my determination on the circumstances of this case.

---

[6] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[7] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Human Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Human Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Human Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

As noted above, Petitioner received a flu vaccine on October 10, 2016. Ex 1 at 1. Three and one-half months later, on January 24, 2017, Petitioner presented to her Primary Care Provider (PCP) with complaints of "left shoulder pain since flu shot last October." Ex 3 at 47. Physical examination (PE) of Petitioner revealed limited range of motion (ROM) of the left shoulder. *Id*. On February 21, 2017, Petitioner saw an orthopedist, who reviewed her imaging studies (an x-ray and an ultrasound), which showed bursitis and mild degenerative changes. Ex 2 at 8. Petitioner continued to have decreased ROM and positive impingement testing and received a cortisone injection. *Id*. at 10.

In April 2017, Petitioner reported temporary relief from the steroid injection, but she subsequently experienced a flare and visited the emergency room (ER) with complaints of "unbearable pain." Ex 4 at 249 and 260. She had another steroid injection two days after her ER visit. Ex 2 at 1. Petitioner also started physical therapy at the end of April 2017, and she attended 23 visits through August 2017. Ex 4 at 278, 296-304 and Ex 7 at 8-39. During this time, Petitioner rated her pain as averaging 3/10 and she continued to have moderately to markedly limited ROM. Ex 11 at 33, 35-36, 39, 41, 49. Petitioner was diagnosed with adhesive capsulitis in July 2017 and had a third steroid injection on August 15, 2017. Ex 11 at 31 and 42.

Due to her continued pain, Petitioner underwent a trigger point injection (TPI) of lidocaine into the left deltoid muscle on December 12, 2017. Ex 13 at 3. After three additional injections in January 2018, Petitioner had "noticeable ROM improvement" but still reported typical pain as 2-3/10 with increases up to 4-5/10. Ex 13 at 42-43 and Ex 21 at 4, 8. Petitioner was advised she could continue to work light duty during this time. Ex 13 at 43. Petitioner then received five additional trigger point injections from February through August 2018. Ex 13 at 26, 29, 37, 39 and 66-67. During this period, Petitioner attended an additional 12 physical therapy sessions. Ex 14.

Petitioner then had a 13th injection on November 1, 2018. Ex 13 at 76. She had some pain relief but was still unable to lift greater than 20 pounds. Ex 13 at 80. As of March 20, 2019, Petitioner's doctor reported that she had "permanent impairment" with "loss of range of motion at the left shoulder in all planes of movement." *Id*. at 81-82. However, he also reported that Petitioner had no permanent work restrictions and was able to perform all of the physical requirements of her job at the time of her injury. *Id*. In her most recent affidavit, dated August 2019, Petitioner reports that while her overall pain has improved since the initial injury, she still experiences pain on a daily basis. Ex 17.

As I informed the parties during the expedited hearing conducted on June 26, 2020,[8] the question in this case is not whether Petitioner is entitled to *any* compensation for her pain and suffering, but rather *what* amount of compensation is justified, based

---

[8] An official recording of the proceeding was taken by court reporter, and a link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the minute entries for this proceeding. Minute Entry, dated June 26, 2020; *see also* www.uscfc.uscourts.gov/trans (last visited July 9, 2020).

upon the facts of the case and considered relevant input. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties, each petitioner deserves an examination of the specific facts in his or her case. Thus, while the amount ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Ms. Dawson-Savard's personal circumstances (as well as the parties' success in framing a reasonable range for the award).

The evidence in this case establishes that Petitioner's injury was on the "severe" end of the median award amount[9] in SIRVA cases, especially when compared to other cases where a petitioner did not undergo surgery – but not so severe as to justify an award on the highest end of the spectrum. Petitioner had a combination of 13 steroid and trigger point injections and attended 35 sessions of physical therapy. While she rated her pain as averaging 3/10, her treating physician reported in August 2019 that she had a permanent impairment with loss of range of motion in her left shoulder. However, at that time, Petitioner had no work restrictions and was able to perform all the requirements of the job she had at the time of her injury. Overall, these circumstances are most like those experienced by the petitioner in *Binette*, in which $130,000.00 was deemed an appropriate award for past pain and suffering.[10] The petitioner in *Binette*, as here, also did not undergo surgery but was nevertheless determined to have a "permanent" injury. *Id*.

I have also considered the other cases referenced by Petitioner to support a higher award but find them unpersuasive. Specifically, Petitioner refers to *Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) *aff'd in rel. part,* 147 Fed. Cl. 131 (2020). The petitioner in *Dillenbeck* worked as a veterinary technician/office receptionist prior to her diagnosis of Guillain-Barré syndrome following a flu vaccine but could not continue to work as a veterinary technician after her injury (she was able to work as a receptionist). *Id*. In the present case, Petitioner, a nurse, alleges that she is no longer able to do direct patient care. ECF 62. In making this assertion, she relies on a note from her physician dated February 20, 2019, which states "I do not think she will be able to get back to being able to work at regular duty as a nurse." Ex 13 at 80. However, on March 20, 2019, after a "physical capacity evaluation," this

---

[9] As noted, I rely on the analysis of awards set forth in cases like *Vinocur* or *Wilt.* I reject Respondent's argument regarding proffered cases as the most accurate gauge of the appropriate amount, however. A proffer is simply Respondent's assessment of the appropriate amount to be awarded, and thus a special master's approval of a settlement at a proffered level does not provide a reasoned instance, produced by a judicial neutral that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers provide *some* evidence of the kinds of awards received overall in comparable cases. I have similarly given less weight to Respondent's blanket citation to comparable tort awards obtained in other fora in the United States, although I remain amenable in the future to consider such a case if Respondent establishes its *specific* comparable value. I also observe that in time, awards in SIRVA cases may trend lower as medical treatment for SIRVA injuries improves (thus making a lowered pain and suffering award appropriate to reflect the less severe nature of the injury).

[10] *Binette v. Sec'y of Health & Human Servs.*, No. 16-0731V, 2019 WL 1552620 (Fed. Cl. Spec. Mstr. March 20, 2019).

same doctor recommended that Petitioner return to work at the same job she had at the time of her injury. *Id*. at 81. As of March 26, 2019, Petitioner reported working three 12-hour shifts per week as a registered nurse in a rehab ward. Ex 16 at 2. Thus, while Petitioner's actual pain and suffering should encompass the physical cost of her injury and the burdens of living with it, a higher award is not justified under the facts of this case.

As for future pain and suffering, there are very few reasoned SIRVA damages decisions addressing this issue. In *Binette*, the petitioner was awarded $1000.00 per year. 2019 WL 1552620 at *1. However, the special master based this award on the petitioner's young age (she was 27 at the time of the hearing); that her pain generally ranged between 5-7/10 but could go as high as 10/10, even after more than three years of treatment; and that her condition was surgically inoperable. *Id*. at *13-14. By contrast, in *Curri v. Sec'y of Health & Human Servs.*, No. 17-432V, 2018 WL 6273562 (Fed. Cl. Spec. Mstr. Oct. 31, 2018), the petitioner was awarded only $550.00 per year. The special master based this award on the petitioner's "significant arm and shoulder pain, her permanently reduced range of motion, and the unique challenges her shoulder injury creates in her day-to-day life as a working mother of three children." 2018 WL 6273562 at *7.

I find that the petitioners in *Binette* and *Curri* had additional confounding factors, when compared with Ms. Dawson-Savard, but that the facts of this case are similar close enough to *Curri* to award a comparable future pain and suffering amount. Therefore, I find that $500.00 annually for future pain and suffering is appropriate based on the facts of this case. <u>That sum shall be reduced to net present value consistent with my calculation in *Dillenbeck*</u>. 2019 WL 4072069 at *15 (one percent net discount rate for the first fifteen years of the award, followed by a two percent net discount rate for the remaining years, based upon a predicted life expectancy of 27 years).

### IV.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, I find that $130,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual (or past) pain and suffering and $500.00 per year reduced to net present value, for the rest of her life expectancy, for future pain and suffering. Ms. Dawson-Savard's date of birth is August 20, 1961, and her remaining life expectancy is approximately 27 years.[11] Thus, her future pain and suffering damages total approximately $13,500.00, prior to conversion to net present value.

In addition, I find (with agreement from the parties) that Petitioner is entitled to compensation of $28,030.13 in lost wages and $145.11 in unreimbursed expenses.

**The parties are to file a joint status report, by no later than <u>Thursday, August 13, 2020</u>: (1) converting my award of future pain and suffering to its net present**

---

[11] The Social Security Administration (SSA) calculates life expectancy. Their life expectancy calculator can be found at https://www.ssa.gov/OACT/population/longevity.html (last visited July 10, 2020). According to SSA's life expectancy calculator, Ms. Dawson-Savard has an additional life expectancy of 27.0 years. She is expected to live to be 85.8 years old. *Id*.

**value,[12] and (2) reporting on all outstanding items of damages that remain unresolved, if there are any remaining issues. Once these issues have been resolved, a damages decision will issue.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[12] As noted above, the parties should reduce the sum to net present value consistent with my calculation in *Dillenbeck*. 2019 WL 4072069 at *15 (one percent net discount rate for the first fifteen years of the award, followed by a two percent net discount rate for the remaining years, based upon a predicted life expectancy of 27 years).